CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 30 2013

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ROBERT EARL NOBLE, | Civil Action No. 7:13cv00195 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| CHRISTOPHER ZYCH *et al.*, | By: Samuel G. Wilson |
| Defendants. | United States District Judge |

Plaintiff Robert Earl Noble, a federal inmate proceeding *pro se*, brings this action pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), alleging that the defendants, twelve federal employees who work at United States Penitentiary, Lee ("USP Lee"), violated Noble's First, Fifth, Eighth, and Fourteenth Amendment rights. Noble's complaint, which comprises sixty-seven pages and nine separate claims, exhaustively details Noble's various interactions with the staff of USP Lee. Noble's nine claims fit into three basic categories: excessive force, deliberate indifference to medical needs, and grievance retaliation. Noble seeks a total of $3 million in damages and an order stripping the defendants of their various licenses, terminating them from their jobs, and mandating that criminal charges be filed against them. After reviewing Noble's complaint pursuant to 28 U.S.C. § 1915A, it appears to the court that Noble's claims stem directly from difficult, exigent situations that Noble himself created, and to which USP Lee staff responded carefully and professionally. Moreover, the facts that Noble offers in support of his claims are in some instances insufficient to state a claim and in other instances entirely sufficient to show that a

particular claim is frivolous. Accordingly, the court dismisses Noble's complaint pursuant to 28 U.S.C. § 1915A(b).[1]

**I.**

On April 14, 2012, USP Lee staff went to Noble's cell and informed him that prison staff had assigned Noble a new cellmate. According to Noble, prison staff would not assure him that the new cellmate posed "no substantial risk of harm to his health or safety," so he "humbly declined" to allow the addition to his cell. (Compl. 5, ECF No. 1-2.) The next day, prison staff made another attempt, and Noble once again refused to allow the new inmate into his cell. Finally, on April 16th, after staff's third attempt, Noble decided that staff had offered adequate safety assurances, and he agreed to receive the new cellmate. Noble claims that this series of events angered correctional officers Campbell and Hammersmith, causing Noble great trepidation.

The next day, "it occurred to [Noble] that he was now 2 to 3 days overdue for his 21 day mandatory cell rotation" (Compl. 7, ECF No. 1-2), and he brought that circumstance to the guards' attention. When guards tried to move Noble to a new cell a few days later, Noble refused, once again claiming that he feared for his "health and safety." (Compl. 8, ECF No. 1-2.) And when officer Campbell allegedly grew agitated about Noble's refusal, Noble papered over his cell window and demanded to speak to a lieutenant. According to Noble, his "demands went

---

[1] Section 1915A states:
(a) Screening.—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
(b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
    (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
    (2) seeks monetary relief from a defendant who is immune from such relief.
(c) Definition.—As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

unanswered." Later that night, Noble declared a hunger strike based on his fear of retribution from officers Campbell and Hammersmith.

Two days later, a group of four guards, including Campbell and Hammersmith, made another attempt to move Noble. Noble refused to leave his cell until he could speak to a lieutenant. When a lieutenant arrived and ordered the guards "off the range" (Compl. 12, ECF No. 1-2), Noble indicated that he was now willing to move. A new group of guards handcuffed Noble and escorted him from his cell. Officer Campbell allegedly then re-joined the group and "roughly grabb[ed]" Noble by his right arm. (Compl. 13, ECF No. 1-2.) "On the verge of panic[k]ing out of fear for his health and safety[,] [Noble] did the one thing he felt was best, he cowerly [sic] dropped to his knees, laid dormant on the floor and implored [a lieutenant] to intervene." (Id.) Guards then shackled Noble's legs and ordered him to stand up. When he refused, the guards picked him up and carried him to the law library, allegedly resulting in the aggravation of a shoulder injury that Noble had previously suffered. Guards called a nurse to the library to examine Noble, and he complained of numbness in his index finger and thumb. When guards escorted Noble to his new cell, he allegedly found it in disarray, with several of his personal belongings missing. Noble declared another hunger strike.

Noble began complaining of pain from the incident. On May 4th, Registered Nurse Bartee examined Noble and prescribed x-rays and an unspecified medication. Around this time, Noble had a counseling session with USP Lee Chief Psychologist Dr. Forbes, and Dr. Forbes determined that there was no need for any psychological follow-up. Noble complained about the lack of psychological follow-up, so Dr. Forbes conducted a second evaluation in the prison's recreation yard, a location that resulted in Noble being "reluctant to speak deeply and express his psychological issues." (Compl. 25, ECF No. 1-2.) Noble then underwent two series of x-rays—

3

one in July that revealed "mild degenerative disc disease" in Noble's spine and another in August that revealed an "obvious abnormality" in Noble's shoulder that caused medical staff to put Noble's arm in a sling and schedule him for orthopedic surgery. (Compl. 22, ECF No. 1-2.)

Throughout this course of events, Noble received multiple prison disciplinary charges for his conduct, and he filed multiple grievances against the USP Lee employees with whom he interacted. Some weeks after these events, Campbell allegedly retaliated against Noble by refusing to issue Noble new clothing, shaving necessities, and cleaning supplies. On September 19, 2012, the Bureau of Prisons transferred Noble to United States Prison, Big Sandy.

## II.

Noble claims that USP Lee staff used excessive force on him by picking him up and carrying him away from his cell after he slumped to the ground and refused to stand. The claim is frivolous, and the court dismisses it.

Excessive force is characterized by "obduracy and wantonness, not inadvertence or error in good faith, . . . whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." United States v. Gore, 592 F.3d 489, 494 (4th Cir. 2010) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Thus, excessive force determinations turn on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." Id. (quoting Whitley, 475 U.S. at 319).

Noble's own complaint shows that for several days he refused to do just about everything that prison staff asked of him. He capped off his intransigence by requesting a cell rotation and then slumping to the floor and refusing to stand and walk when guards attempted to escort him to a new cell. Whatever his claimed reason for such behavior (a purported fear for his safety), the

facts show that prison staff lifted Noble off the floor for the purpose of moving an obstinate prisoner to a new cell, and not in a malicious and sadistic effort to cause harm. Accordingly, the court finds that Noble's excessive force claim is frivolous and dismisses it.

### III.

Noble claims that prison staff showed deliberate indifference to his medical needs both in the aftermath of his cell rotation and by permitting him only two brief psychological counseling sessions. Had Noble offered sufficient facts in support of the claim, the court would likely find it wholly frivolous. In any event, the court dismisses Noble's deliberate indifference claim.

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the plaintiff prisoner was suffering from a serious medical need and that, subjectively, the prison staff members were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). Mere allegations of malpractice or negligence in treatment do not state cognizable constitutional claims. Estelle, 429 U.S. at 105–06; Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998). A claim regarding a disagreement between an inmate and medical personnel over a diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Estelle, 429 U.S. at 105–06; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Here, Noble's allegations establish little but that he sought medical attention, received it, and believes it was deficient. In fact, Noble received treatment immediately after the incident

5

and in the weeks following, and medical staff prescribed medication, x-rays, a shoulder sling, and orthopedic surgery. Likewise, Dr. Forbes performed one psychological evaluation and then another after Noble demanded it. Without more, Noble's disagreement with medical staff about his course of treatment does not form the basis for a viable Eighth Amendment claim. Accordingly, the court dismisses Noble's deliberate indifference claims.[2]

## IV.

Noble claims that officers Campbell and Hammersmith retaliated against Noble for filing grievances against them and that various defendants conspired to cover up the officers' actions. "[C]laims of retaliatory actions are legally frivolous unless the complaint implicates some right that exists under the Constitution." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "That is, plaintiffs must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Id. Because "there is no constitutional right to participate in grievance proceedings," id., Noble's retaliation claims against Campbell and Hammersmith (and the various other defendants) are frivolous.[3] See, e.g., Smith v. Ray, 36 F. App'x 99 (4th Cir. 2002) (affirming the district court's dismissal of a

---

[2] Noble also claims that the defendants violated "his privacy rights under Title 5 of the United States Code." The familiar rules of pleading are greatly relaxed for *pro se* plaintiffs, and litigants with meritorious claims should not be stymied by technical requirements. See Beaudett v. City of Hampton, 775 F.2d 1274, 1277–78 (4th Cir. 1985). Still, the relaxation of the pleading rules is not without limits. A court must, at a minimum, be able to discern from the complaint the parties being sued and the alleged conduct on which each claim rests. Though relaxed, the standard still demands general coherence, and it does not require courts "to conjure up questions never squarely presented to them." Id. at 1278. Given the court's disposition of Noble's other claims, the court will not attempt to construe Noble's opaque statutory claim.

[3] Noble makes a brief and unconvincing attempt to characterize his use of the grievance procedures as a matter of First Amendment free speech. However, the Fourth Circuit has held that a prisoner's use of grievance procedures is not a protected First Amendment right. See Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. 2011). "Moreover, the plaintiff must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension." Id. (quoting Adams, 40 F.3d at 74–75). Here, Noble offers pure speculation—not specific facts—linking his use of the grievance procedures to the defendants' alleged retaliation.

6

prisoner's grievance-retaliation Bivens action "because access to the grievance procedure is not a constitutionally protected right"). Accordingly, the court dismisses Noble's retaliation claims.

V.

Noble's own factual allegations show that he created a series of difficult situations for prison staff and that prison staff offered measured responses that created no discernible foundation for constitutional liability.[4] Accordingly, and for the reasons stated, the court dismisses Noble's complaint pursuant to 28 U.S.C. § 1915A(b).

**ENTER**: April 30, 2013.

UNITED STATES DISTRICT JUDGE

---

[4] The court notes that Noble's various conspiracy claims go no further than the underlying alleged constitutional violations.